IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSHUA BOWENS,

        Plaintiff,

  v.

CO MATTHEWS, et al.,

        Defendants.

CIVIL ACTION
NO. 17-4800

## OPINION

**Slomsky, J.**                                                                                                                         **July 11, 2018**

### I.   INTRODUCTION

Plaintiff Joshua Bowens, an inmate confined at the State Correctional Institution (SCI) at Graterford and proceeding pro se, brings this action under 42 U.S.C. § 1983 and § 1984 against Defendants[1] CO Nyenye Matthews, CO Matt, CO Martin, and John/Jane Does.[2] (Doc. No. 4.)

---

[1] On November 1, 2017, following the filing of the Complaint, the Clerk of Court served a Notice of a Lawsuit and Request to Waive Service of a Summons upon each Defendant. (Doc. No. 7.) On December 28, 2017, Defendant Nyenye Matthews was the only defendant who waived service of the summons. (Doc. No. 8.) None of the other Defendants in this case has been served.

[2] According to the Complaint, the "John/Jane Doe" defendants

> were employed at [SCI Graterford] when Plaintiff, while under the care, custody and control of the Commonwealth Defendants, suffered actual injuries as a direct result of the personal actions committed by each above-named Defendants, who while working under the color of state law, violated clearly established laws (i.e., First, Fifth, Eighth, Ninth and Fourteenth Amendment Rights of the United States Constitution), were deliberately indifferent to the serious mental health needs of Plaintiff, and failed to protect Plaintiff from harm. Plaintiff respectfully requests permission to amend this complaint with the identities of those persons personally involved in the incidents complained of herewith, once disclosed during discovery.

1

Plaintiff claims that Defendants, who are correctional officers at SCI Graterford, Pennsylvania were responsible for the loss of certain documents that were necessary for his ongoing criminal case. (Doc. No. 1-3.) He further alleges that because the documents were "misplaced, lost, stolen and/or disregarded," a law clinic refrained from accepting his case for representation, thereby hindering his ability to raise in a post-conviction motion a claim about an incompetency defense at trial. (Id.) Defendant Nyenye Matthews has filed a Motion to Dismiss (Doc. No. 9) and Supplemental Motion to Dismiss (Doc. No. 16), which are now ripe for a decision.[3]

## II. BACKGROUND

On or about June 5, 2017, Plaintiff was admitted to the psychiatric observation cell at SCI Graterford for "mental health problems." (Id. ¶ 8.) A week later, on June 12, 2017, he returned to the unit where he was previously assigned and discovered that certain legal papers related to his criminal case were missing. (Id. ¶¶ 9-10.) These documents purportedly contained information related to his "mental health illness, defect, condition, treatment and history" and allegedly were considered by the trial judge who presided over his sentencing. (Id. ¶ 10; Doc. No. 16 at 5.) He identifies Defendants Matthews, Matt, and Martin as the correctional officers responsible for collecting his personal items outside of his presence. (Doc. No. 1-3 at 4 ¶ 12.)

---

(Doc. No. 4 ¶ 5.)

Since the filing of the Complaint, Plaintiff has not provided the identities of John/Jane Does. Accordingly, the claims against them will be dismissed for this reason and for the reasons set forth in this Opinion. In addition, the full names of CO Matt and Martin were never provided by Plaintiff.

[3] In making a decision, the Court has considered the following documents: Plaintiff's Complaint (Doc. No. 4); Defendant's Motion to Dismiss (Doc. No. 9); Defendant's Supplemental Motion to Dismiss (Doc. No. 16); Plaintiff's Response to the Motion (Doc. No. 19); Defendant's Reply to Plaintiff's Response (Doc. No. 19); Plaintiff's Statement (Doc. No. 22); Defendant's Response to Plaintiff's Statement (Doc. No. 23); and arguments made by Plaintiff and defense counsel at the February 27, 2018 hearing on the Motions.

On or about June 22, 2017, Plaintiff filed an Official Inmate Grievance with SCI Graterford officials requesting that his documents be returned to him or, alternatively, if the documents could not be returned, that he be awarded $50,000 in compensatory damages and $100,000 in punitive damages. (Id. 4 ¶ 13.) On July 15, 2017, Plaintiff's grievance was denied by "T. McGrier." (Id. at 12.) The denial stated that Plaintiff had signed an inventory sheet, confirming that he had received a box of mail and other documents, presumably including the allegedly lost papers at issue. (Id. at 12.)

Plaintiff appealed the denial to the Facility Manager of SCI Graterford claiming that the legal papers he was seeking were not listed on the inventory sheet. (Id. at 5 ¶ 15.) In this undated appeal, he further explained that he had received mail in May while assigned to his former unit, of which he made copies and gave them to a librarian at the prison law library. (Id. at 5 ¶ 15; 15.) Then, while he was placed in the psychiatric observation cell "for a week and half," Defendants Matthews, Matt, and Martin packed his property, including the legal papers. (Id.) Plaintiff again alleged that they were "responsible for my legal work not being returned to [sic] when I was released out of [psychiatric observation cell] housing area." (Id.) He argued that the "matter should be remanded back to the I-block housing lieutenant for further investigation" and stated that the "missing legal documents are listed" with an individual named James Hendel at the "mental health group paraprofessional law clinic" located at "1500 walnut st ste 800 Philadelphia pa, 19102." (Id. at 13.)

On August 18, 2017, Facility Manager Cynthia Link denied this appeal. (Id. at 14.) In upholding the previous denial of Plaintiff's grievance, Link stated: "I have reviewed your grievance appeal. The assigned grievance officer appropriately responded to [your] grievance.

3

You had signed the property sheet. In doing such, you are acknowledging all of your property is account [sic] for. You will not be awarded any monetary compensation. (Id.)

On August 26, 2017, Plaintiff filed a second appeal with the "Office of Special Intelligence/ Investigations" at the Pennsylvania Department of Corrections. (Id. at 15.) He claimed that the property sheet referred to in Link's denial did not contain the missing documents at issue. (Id.) He repeated his previous grievance about the disappearance of his legal documents but also alleged that Defendants Matthews, Matt, and Martin told Plaintiff that they were going to discard his legal materials. (Id.) Additionally, he called for the investigation of the Facility Manager, claiming that she "did a low level of [investigation] and lacked due diligence in this matter ultimately depriving me of the intangible right of honest services as a facility manager." (Id.) Plaintiff reiterated his request for relief of $50,000 in compensatory damages and $100,000 in punitive damages, but also stated that he was "willing to settle this matter before it becomes a civil action before the federal court." (Id.)

On September 26, 2017, Dorina Varner, Chief Grievance Officer of the Pennsylvania Department of Corrections, upheld the previous denials of Plaintiff's request. (Id. at 16.) Varner's denial stated that Plaintiff failed to provide any evidence to support his claims. (Id.) On October 25, 2017, Plaintiff filed the instant action against the following Defendants: CO Matthews; CO Matt; CO Martin; and John/Jane Does. (Doc. No. 4.)

On December 28, 2017, Defendant Nyenye Matthews filed a Motion to Dismiss, moving to dismiss all claims against all Defendants under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 9.) Matthews argues that Plaintiff fails to plead adequately a constitutional infringement, despite his allegations that his rights under the First, Fifth, Eighth, Ninth, and

4

Fourteenth Amendments were violated. (Id. at 4.) Matthews contends that Plaintiff failed to set forth any facts to support the notion that his claims amounted to constitutional violations. (Id.)

On February 27, 2018, the Court held a hearing on the Motion to Dismiss, as well as Plaintiff's Motion for Appointment of Counsel (Doc. No. 11).[4] (Doc. No. 14.) Based upon statements made by Plaintiff and Defendant Matthews' counsel, it became apparent that the documents at issue were two mental health reports which had been ordered by the Court of Common Pleas of Philadelphia County during his criminal trial in state court. At the hearing, the Court ordered Defendant's counsel to make reasonable efforts to locate the reports, provide copies of the reports to Plaintiff, or submit a status update if she could not find them. (Doc. No. 17.)

On March 1, 2018, Matthews filed a Supplement to the Motion to Dismiss, which included an update to the Court regarding her counsel's efforts to locate the two missing mental health reports. (Doc. No. 16.) Matthews' counsel had located a 2004 psychological reevaluation report from Plaintiff's school district and a 2005 mental health evaluation, both of which were ordered around the time of Plaintiff's conviction. (Id. at 4.) She sent copies of these reports to Plaintiff and to the Court. (Id.) Based upon review of the documents, which contain dates that correlate with the timing of Plaintiff's conviction and match the description Plaintiff provided regarding the missing items, it appeared that these were copies of the two missing reports at issue.

On March 12, 2018, Plaintiff filed a Response to Matthews' Motion to Dismiss alleging that the documents located by Matthews' counsel "are not the same documents that Commonwealth Defendants confiscated from Plaintiff's cell and that are in question in this

---

[4] Plaintiff appeared at the hearing via video link.

matter." (Doc. No. 19 ¶ 3.) On April 30, 2018, Plaintiff also filed a Notice on the docket addressed to Defendant's counsel, once again claiming that the recently located documents are not the missing documents at issue.[5] (Doc. No. 22.) Thus, for purposes of deciding the Motion to Dismiss, the state of the record is that Plaintiff had certain papers in his cell, he was removed from the cell for the reasons stated, and when he returned, the papers were missing. The Motion to Dismiss is now ripe for a decision.[6]

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While pro se

---

[5] In this submission, Plaintiff also states the following:

> I am willing to settle the lawsuit under the following conditions:
>
> (1) If the Defendants pay the initial filing fee for initiating this civil action;
> (2) Locate and return the correct mental health documentation if found;
> (3) Pay me compensatory damages in the amount of $10,000.00, plus court costs, fines, and/or fees;
> (4) Agree that no retaliatory actions will be taken against me, including retaliatory transfer to another facility.
>
> This offer stands for no longer then [sic] the date the judge sets this case for trial.

(Doc. No. 22.) The Court notes that on October 25, 2017, Plaintiff filed a Motion for Leave to Proceed in Forma Pauperis, which the Court granted on October 31, 2017, thereby waiving Plaintiff's filing fee. (Doc. Nos. 1, 3.)

[6] In reaching a decision, the Court has considered the Complaint (Doc. No. 1-3); the Motion to Dismiss (Doc. No. 9); Plaintiff's Motion for Appointment of Counsel (Doc. No. 11); the Supplemental Motion to Dismiss (Doc. No. 16); Plaintiff's Response to the Motion to Dismiss (Doc. No. 19); Plaintiff's Statement Addressed to Defendant's Counsel (Doc. No. 22); and Defendant's Response to Plaintiff's Statement (Doc. No. 23.)

litigants are held to less stringent standards and their pleadings are to be "liberally construed," they still must adhere to the basic standards of Rule 8. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. A motion under Rule 12(b)(6) therefore tests the sufficiency of the complaint against the pleading requirements of Rule 8(a).

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal, it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663; see also Twombly, 550 U.S. at 544. "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

When determining a motion to dismiss, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Where, as here, the complaint is filed pro se, the "complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Fatone v. Latini, 780 F.3d 184, 193 (3d Cir. 2015) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). It should be dismissed only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of [his] claim that would entitle [him] to relief." Olaniyi v. Alexa Cab Co., 239 F. App'x 698, 699 (3d Cir. 2007) (citing McDowell v. Del. State Police, 88 F.3d 188, 189 (3d Cir. 1996)).

## IV. ANALYSIS

Plaintiff raises claims against Defendants CO Matthews; CO Matt; CO Martin, and John/Jane Does pursuant to the First, Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution, under 42 U.S.C. § 1983 and § 1985 (commonly referred to as "Section 1983" and "Section 1985").[7] (Doc. No. 1-3.) He claims that while he was under the "care, custody and control" of Defendants, he suffered "actual injuries as a direct result of the personal actions committed by each of the Defendants." (Id. ¶ 1.) These alleged injuries refer to the misplacement of his legal documents which prevented a law clinic from accepting his case and hindered his ability to raise a defense of mental incompetency for the purposes of challenging his conviction. He summarily requests declaratory and injunctive relief, compensatory, punitive and nominal damages, as well as appointment of counsel and attorney's fees and a temporary restraining order and/or permanent injunction barring Defendants from committing further retaliatory acts and/or from transferring him to another prison without permission from the Court. (Id. at 7-8.)

Defendant Nyenye Matthews moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that he fails to state a constitutional violation or an actual injury.[8] (Doc. No. 9.) Interpreting Plaintiff's First Amendment claim as an "access-to-courts" claim, Matthews argues two points. First, that Plaintiff is unable to show that an actual injury

---

[7] 42 U.S.C. § 1985 invokes liability for cases involving conspiracy to commit civil rights violations in violation of § 1983. "[A] defendant cannot be liable under § 1985 . . . unless the defendant had some awareness of the underlying violation." Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 224 (3d Cir. 2015). Plaintiff has not pled any facts showing the existence of a conspiracy or that Defendants had knowledge of the alleged civil rights violations. Thus, his § 1985 claim will be dismissed.

[8] As noted earlier, COs Matt and Martin were never served with a copy of the summons and Complaint and therefore no motion is made on their behalf.

occurred as a result of the correctional officers' actions because he fails to demonstrate the pursuit of a non-frivolous claim in challenging his criminal conviction. (Doc. No. 9 at 4-5.) Second, that Plaintiff cannot show that there are no other remedies for his loss of legal materials because there are likely duplicate copies of the documents in question. (Id. at 8.)

With respect to Plaintiff's Fifth Amendment claim, Matthews argues that because Plaintiff is a state inmate and the defendants are state officials, he is unable to advance a Fifth Amendment due process claim. (Id. at 9.) In challenging Plaintiff's Eighth Amendment claim, Matthews submits that Plaintiff fails to plead sufficient facts to show that the loss of his documents constitutes cruel and unusual punishment. (Id. at 9-10.)

Regarding Plaintiff's Ninth Amendment claim, Matthews argues that because this constitutional provision is not an independent source of individual rights, Plaintiff has no remedy under this provision. (Id. at 10.) Finally, as to Plaintiff's Fourteenth Amendment claim, Matthews argues that Plaintiff was afforded an opportunity to be heard on any deprivations.

At the outset, in order for Plaintiff to establish a § 1983 claim, he must show that (1) the conduct at issue was committed by persons acting under color of state law; and (2) the conduct at issue violated a right, privilege, or immunity guaranteed by the Constitution or laws of the United States. Galena v. Leone, 638 F.3d 186, 196-97 (3d Cir. 2011). Pursuant to the United States Supreme Court holding in West v. Atkins, 487 U.S. 42, 54-58 (1988), Defendants are state actors because they are employees of the state correctional facility. They have the responsibility for assuring the care, custody, and security of the incarcerated inmates, and for this reason they act under color of state law. Accordingly, the focus here is on whether Defendants violated Plaintiff's constitutional rights. The Court will now address these claims seriatim.

### 1. Plaintiff Fails to State a First Amendment Claim

Plaintiff fails to state a First Amendment claim because he is unable to show that he suffered an actual injury resulting from the misplacement of two mental health records.

Under the First Amendment, every inmate has the right of access to the courts. Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) (citing Lewis v. Casey, 518 U.S. 343, 346 (1996)). Prison authorities are required to provide inmates with "adequate law libraries or adequate assistance from persons trained in the law." Casey, 518 U.S. at 346 (citing Bounds v. Smith, 430 U.S. 817 (1977)). To show a violation of the right of access to the courts, a plaintiff must show (1) that he "suffered an 'actual injury'—that [he] lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim" and (2) that he has "no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Monroe, 536 F.3d at 205 (citing Christopher v. Harbury, 536 U.S. 403, 415 (2002)). To allege such a claim, a complaint "must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Id. at 205-06.

In Monroe v. Beard, a group of SCI Graterford inmates argued that their constitutional rights were violated after prison employees confiscated their legal materials. Id. at 202. The Third Circuit held that the inmates failed to show that the confiscation of their materials violated their constitutional rights, even when they amended their complaint to allege that they missed the opportunity to pursue challenges of their convictions. Id. at 206. By failing to present facts that showed their claims were non-frivolous, they were unable to sufficiently allege they suffered an actual injury. Id. In addition, the inmates failed to show they had no other remedy to compensate them for their lost claims because the prison provided them with three opportunities to review and receive non-contraband items that were confiscated. Id. As

the Third Circuit said in Monroe, "although [Plaintiffs] cite their 'lost' proceedings, they nevertheless failed to plead facts showing that their claims were nonfrivolous or may no longer be pursued as a result of defendant's actions." Id. at 206 n.9.

Similarly in the instant case, Plaintiff claims that the loss of his legal documents precluded a law clinic from accepting his case and impacted his ability to present a defense of mental incompetency at trial. (Doc. No. 4 ¶ 19.) These, however, are based on conclusory speculations. He offers no other evidence to support the notion that the unavailability of two mental health reports prevented the clinic from agreeing to represent him and defeated his incompetency defense. Plaintiff also fails to show that he was in pursuit of a non-frivolous claim.

With respect to the availability of other remedies to compensate him for his lost claim other than the present suit, Plaintiff failed to alert the prison immediately that his items were missing. The grievance records show that Plaintiff signed inventory sheets after his transfer from the psychiatric observation unit to his former unit. By doing so, he verified that he received all items from his original cell. He was also was afforded the opportunity to locate other copies of the documents.[9] For all the above reasons, Plaintiff's First Amendment claim is

---

9   During the February 27, 2018 hearing before the Court, defense counsel represented that she was willing to assist Plaintiff in locating the lost documents. Thereafter, defense counsel made efforts to locate the two reports Plaintiff referred to and found two documents that appeared to match Plaintiff's description. (See Doc. No. 16.) As noted, Plaintiff claims that these two documents are not the ones he is looking for.

    It is likely that duplicate copies of the documents may be retained elsewhere, including prison health services, since Plaintiff claims that the mental health reports were made pursuant to an order issued by the state court judge presiding over his criminal trial and sentencing. In his appeal addressed to the SCI Graterford Facility Manager, Plaintiff even stated that the "missing legal documents are listed with [the] paralegal" at the law clinic. (Doc. No. 4 at 13.) As Defendant suggests, Plaintiff can also obtain copies of the reports from the Philadelphia Court of Common Pleas or the Pennsylvania Department of

without merit.

## 2. Plaintiff Fails to State a Fifth Amendment Claim

Plaintiff alleges that Defendants "violated clearly established laws," including those under the Fifth Amendment (Doc. No. 1-3 at 1) but fails to plead sufficient facts to state a claim under this provision. Because Plaintiff is proceeding pro se, the Court construes his claims liberally. See Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (sufficiency of a pro se complaint is to be construed liberally). With respect to his invocation of his Fifth Amendment rights, Plaintiff appears to argue that the misplacement of his two documents amounts to a deprivation of property in violation of his due process rights.

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. The due process clause under the Fifth Amendment restricts the actions of the federal government. Caldwell v. Beard, Civ. A. No. 08-3286, 2009 WL 1111545, at *189 (E.D. Pa. Apr. 27, 2009) (citing Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)). An inmate's "due process rights are not violated provided that adequate and meaningful postdeprivation" procedures are available. McEachin v. Beard, 319 F. Supp. 2d 510, 514 (E.D. Pa, 2004) (citing Hudson v. Palmer, 468 U.S. 517, 533 (1984)). Importantly, however, the Fifth Amendment due process clause only limits the actions of federal officials, not state officials. Huffaker v. Bucks Cty. Dist. Attorney's Office, 758 F. Supp. 287, 290 (E.D. Pa. 1991) (citing Bartkus v. Illinois, 359 U.S. 121, 127 (1959)).

Plaintiff's claims arise from actions committed by correctional officers at a Pennsylvania state facility. They are state officials. Thus, his Fifth Amendment due process claim against

---

Corrections through a right-to-know request. (Id. at 5.) Under Pennsylvania's "Right-to-Know" Act, individuals can submit requests to obtain public documents issued or retained by the state. 65 Pa. Stat. § 67.301.

Defendants fails because they are state employees and even if the due process clause could be interpreted to restrict the actions of state officials, Plaintiff's claim would still fail because he has been afforded an adequate and meaningful postdeprivation procedure. As evidenced in the record, Plaintiff commenced a grievance process, filing appeals all the way up to the level of the Chief Grievance Officer of the Pennsylvania Department of Corrections. Furthermore, in addition to having access to an adequate and meaningful procedure, Plaintiff also has other avenues to obtain copies of the missing documents as noted, supra. For these reasons, Plaintiff's claims against Defendants under the Fifth Amendment are without merit.

### 3. Plaintiff Fails to State an Eight Amendment Claim

As with his claims under other constitutional provisions, Plaintiff references violations of the Eight Amendment generally. He fails to state a proper Eight Amendment claim, however, because he has not shown how Defendants acted with deliberate indifference to his health or safety.

The Eighth Amendment prohibits the federal government from imposing cruel and unusual punishment. U.S. Const. amend. VIII. To state a claim against Defendants under the Eighth Amendment, an inmate plaintiff must demonstrate "more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 219 (1986). Prison officials violate an inmate's Eight Amendment right if they are "deliberately indifferent to inmate health or safety and when this act or omission results in the denial of 'the minimal civilized measure of life's necessities.'" Caldwell, 2009 WL 1111545 at *188 (citing Farmer v. Brennan, 511 U.S. 825 (1994)).

In Atwell v. Metterau, a state prisoner alleged that two correctional officers confiscated his legal papers and personal items and claimed that they violated his rights under the First,

Fifth, Eighth, and Fourteenth Amendments. 255 F. App'x 655, 655 (3d Cir. 2007). The Third Circuit held that the prisoner's allegation of his deprivation of property was not an Eighth Amendment violation because the deprivation was not of the "minimal civilized measure of life's necessities." Id. at 658.

Here, as in Atwell, Plaintiff accuses Defendants of misplacing, losing, stealing, or discarding his materials and claims that for this reason, they acted with deliberate indifference to his serious mental health needs. (Doc. No. 1-3 ¶ 5.) Plaintiff's allegations that Defendants are responsible for the disappearance of his legal documents do not rise to the level of lack of due care set forth in Whitley and are not considered a deprivation of a life necessity as envisaged in Atwell. Though the disappearance of the two reports may have inconvenienced Plaintiff who seeks to submit these documents to a law clinic to challenge his conviction or sentencing, it is possible these items may be obtained elsewhere, as discussed supra. Accordingly, Plaintiff's Eight Amendment claim fails.

### 4. Plaintiff Fails to State a Ninth Amendment Claim

Plaintiff's Complaint also alleges violations of the Ninth Amendment generally, but fails to plead a cognizable claim under this provision.

The Ninth Amendment states: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. This Amendment has been interpreted "only as a rule of construction" to apply to other provisions of the Constitution, Kuromiya v. United States, 37 F. Supp. 2d 717, 725 (E.D. Pa. 1999), but does not "independently provide a source of individual constitutional rights." Clayworth v. Luzerne County, 513 F. App'x 134, 136 (3d Cir. 2013) (citing Jenkins v. Commissioner, 483 F.3d 90, 92 (2nd Cir. 2007)).

15

Therefore, because the Ninth Amendment is not a source of any fundamental rights, his Ninth Amendment claim is meritless.

### 5. Plaintiff Fails to State a Fourteenth Amendment Claim

Finally, Plaintiff fails to state a claim under the Fourteenth Amendment because his allegation that the correctional officers misplaced or lost his documents does not rise to the level of a due process violation.

"To state a substantive due process claim under the Fourteenth Amendment, a plaintiff must establish that he has a protected constitutional interest at issue and that the defendants deprived him of it by engaging in conduct that 'shocks the conscience.'" Clayworth, 513 F. App'x at 136 (quoting Chainey v. Street, 523 F.3d 200, 219-20 (3d Cir. 2008)). In addition to the First and Fifth Amendments, the Fourteenth Amendment also guarantees inmates the right to access to courts, discussed supra. Monroe v. Beard, 536 F.3d 198, 205 (2008). The analysis is the same under either provision: an inmate alleging a violation of this right must still show an actual injury and that they have no other remedy as recompense for the lost claim other than the current suit.

Construing Plaintiff's claims liberally, he appears to bring a due process challenge against all Defendants, though he only makes specific allegations against Defendants Matthews, Matt, and Martin in their capacity as correctional officers. The Supreme Court has held, however, that the lack of due care on the part of prison custodians does not amount to a Fourteenth Amendment deprivation. See Daniels v. Williams, 474 U.S. 327, 331 (1986) (holding that there was no due process claim resulting from prison official's negligence which caused unintended injury to petitioner). The Court explained that the Fourth Amendment's objective is to prevent abuse of power and thus, "lack of due care suggests no more than a failure to

measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law." Id. at 332.

Accordingly, the misplacement of two mental health reports does not rise to the level of a due process violation under the Fourteenth Amendment. Assuming the correctional officers misplaced the documents, this action, at most, could be considered a negligent act, but not an abuse of power. Thus, Plaintiff also fails to state a Fourteenth Amendment due process claim.

## V. CONCLUSION

For the foregoing reasons, Defendant Matthews' Motion to Dismiss (Doc. No. 9) and Supplemental Motion to Dismiss (Doc. No. 16) will be granted. Plaintiff's Motion for Appointment of Counsel (Doc. No. 11) and Defendant's Motion to Stay Discovery (Doc. No. 26) will be denied as moot. An appropriate Order follows.